IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00938-PAB-KLM

CANDACE ELAINE SHERMAN,

    Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, and
LIBERTY MUTUAL FIRE INSURANCE COMPANY,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment and Memorandum Brief in Support Thereof** [#43][1] (the "Motion"). Plaintiff, who has proceeded as a pro se litigant since the withdrawal of her counsel,[2] filed a Response [#61] in opposition to the Motion [#43], and Defendants filed a Reply [#62]. The Motion [#43] has been referred to the undersigned for a recommendation pursuant to 28 U.S.C. §

---

[1] "[#43]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

1

636(b)(1) and D.C.COLO.LCivR 72.1.  *See* [#45].  The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#43] be **GRANTED in part and DENIED in part**.

## I.  Summary of the Case

The factual record and reasonable inferences therefrom are viewed in a light most favorable to Plaintiff as the party opposing summary judgment.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  However, the parties disagree on nearly every aspect of this case, including which Defendant issued the underlying insurance policy.[3]  The only facts submitted by Defendants to which Plaintiff explicitly agrees are that she is a resident of San Diego, California, that her 2002 Kia Sedona was "garaged," licensed, and registered in California, that she possesses a California driver's license, and that in March 2018 she was driving east on I-70 through Colorado in this vehicle when she was in an accident.  *Motion* [#43] at 2 ¶¶ 3-7; *Response* [#61] at 4 ¶¶ 3-7.

Ultimately, this lawsuit was filed on March 10, 2021, asserting a single breach of contract uninsured motorist claim under Plaintiff's insurance policy.  *See Compl.* [#4].  In the present Motion [#43], Defendants seek entry of summary judgment in their favor on this claim.  Generally, Defendants' theory of the case is that Plaintiff lost control of her vehicle as it slid on the icy mountain road on which she was driving too quickly, causing

---

[3]  Throughout her Response [#61], Plaintiff asserts that Defendants have committed fraud in connection with which entity issued the policy.  *See, e.g.*, *Response* [#61] at 3, 9, 12.  However, Plaintiff has not asserted a fraud claim in the operative complaint.

her to go off the side of the highway. In contrast, Plaintiff's theory of the case is that her vehicle was hit or tapped by another vehicle, causing her to go off the side of the highway, and that the other vehicle did not stop.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248;

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works, Inc., v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

4

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>
> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

## II.  Analysis

The parties do not dispute that California law governs the substantive issues in this lawsuit, *see Motion* [#43] at 7-8; *Response* [#61] at 9-11, and the Court finds no reason to question this agreement.  *See, e.g.*, *State Farm Auto. Ins. Co. v. Mendiola*, 865 P.2d 909 (Colo. App. 1993).

### A.    Issuing Insurer

The parties dispute which Defendant issued the insurance policy underlying Plaintiff's claim.  Defendants state that the Policy at issue in this action was issued by Defendant Liberty Mutual Fire Insurance Company.  *Motion* [#43] at 13.  In support, they cite to the Policy, which provides: "LibertyGuard Auto Policy Declarations provided and underwritten by Liberty Mutual Fire Insurance Company (a stock insurance company), Boston, MA."  *Policy* [#43-1] at 5.  Defendants assert that this document shows that Defendant Liberty Mutual Insurance Company did not issue the Policy or insure Plaintiff.  *Motion* [#43] at 13.  They state that "Defendant Liberty Mutual Insurance Company is not,

5

therefore, a proper party to this suit and Plaintiff's breach of contract claim against it is neither factually nor legally cognizable." *Id.*

In response, Plaintiff asserts that "Defendants have presented a fraudulent claim against themselves by using an insurance company name [LMFIC] policy that does NOT exit [sic]." *Response* [#61] at 4. In support, she cites to the second page of the Policy, which mentions neither Defendant by name but does include a logo in the corner for "Liberty Mutual Insurance." She further states: "There can not be two policies with the same policy number with two different insurance names." *Id.* at 9. In reply, Defendants state that "[t]he existence of two insurance carriers in this case is due to the fact that Plaintiff elected to sue two insurers, one of whom did not issue any policy to Plaintiff." *Reply* [#62] at 9.

The Policy provided by Plaintiff, *see* [#61-5] is identical to the one provided by Defendants, *see* [#43-1]. The basis for Plaintiff's belief that there are two policies, one underwritten by each Defendant but with the same policy number, is unclear. The Policy explicitly states which insurance company issued the Policy and underwrote it, i.e., Defendant Liberty Mutual Fire Insurance Company. *See* [#43-1] at 5; [#61-5] at 6. Based on the record before it, the Court cannot find that there is a genuine issue of material fact as to which Defendant issued the Policy and therefore is a proper party with respect to the sole breach of contract claim in this action.

Accordingly, the Court **recommends** that the Motion [#43] be **GRANTED in part** to the extent that summary judgment on Plaintiff's breach of contract claim against

Defendant Liberty Mutual Insurance Company, the sole claim asserted against this Defendant, enter in favor of Defendant Liberty Mutual Insurance Company.

**B.      Physical Contact**

The parties disagree on whether California law requires physical contact between a plaintiff's vehicle and an uninsured vehicle before uninsured motorist insurance benefits may be awarded. *Motion* [#43] at 8; *Response* [#61] at 11-12; *Reply* [#62] at 2-4.

Pursuant to Cal. Ins. Code § 11580.2(b), an "'uninsured motor vehicle'" means a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident . . . , provided that, with respect to an 'uninsured motor vehicle' whose owner or operator is unknown: (1) The bodily injury has arisen out of physical contact of the automobile with the insured or with an automobile that the insured is occupying."[4] Thus, California law requires that there be "physical contact" between a plaintiff's vehicle and an uninsured vehicle to recover bodily injury damages under this provision. *See* Cal. Ins. Code § 11580.2(b).

Courts in California have interpreted this provision consistently. "Under California law, any uninsured motorist claim for damages involving an unknown owner or driver must offer as a prerequisite to recovery proof that the injury arose out of physical contact between the insured and the uninsured's car." *State Farm Auto. Ins. Co. v. Wright*, 875 F.2d 871 (9th Cir. 1989) (unpublished); *see also Orpustan v. State Farm Mut. Auto. Ins. Co.*, 500 P.2d 1116 (Cal. 1972) ("[Section 11580.2] makes proof of 'physical contact' a

---

[4] The Court notes that Plaintiff's requests for relief in the Complaint [#1] appear to all stem from bodily injury damages.

condition precedent in every case for the recovery of damages caused by an unknown vehicle. There are no exceptions."); *Nat'l Am. Ins. Co. v. Arutiunian*, No. B148626, 2002 WL 435194, *2 (Cal. App. 2d Mar. 19, 2002) ("Consistent with its intended purpose of preventing fraudulent claims, the physical contact requirement has been upheld as a condition precedent to uninsured motorist coverage.") (citing *Boyd Interinsurance Exch.*, 136 Cal. App. 3d 761, 765 (Cal. App. 3d 1982)).

In *Inter-Insurance Exchange of Automobile Club of Southern California v. Lopez*, 238 Cal. App. 2d 441, 443 (Cal App. 2d 1965), the California Court of Appeals noted that the physical contact and certain other requirements "were designed to curb fraud, collusion, and other abuses arising from claims that phantom cars had caused accidents which, in fact, had resulted solely from the carelessness of the insured." The appellate court gave the example of "a driver who fell asleep and hit a telephone pole [who] might claim he had swerved off the road to avoid being hit by an unidentified vehicle." *Lopez*, 238 Cal. App. 2d at 443. The court concluded that "[t]he provision requiring physical contact with the unknown vehicle was added to the statute in order to eliminate such fictitious claims." *Id.*

In short, California law is clear that, where bodily injury is at issue, and where the other purported vehicle's owner/operator is unknown or uninsured, there must be proof of physical contact between the unknown/uninsured vehicle and the vehicle of the plaintiff seeking to recover on an uninsured motorist claim.

Here, Defendants primarily rely on two pieces of evidence to support their assertion that Plaintiff was involved in a single car accident. The first comes from

Colorado State Patrol Trooper Colin Remillard ("Remillard"), who attended the scene of the accident shortly after it occurred. In the contemporaneous accident report Trooper Remillard authored, he noted that the "Road Condition" was "Icy." *Defs.' Ex. B* [#43-2] at 3. He wrote that the accident occurred in the following manner:

> [Plaintiff's] Vehicle 1 was traveling eastbound on Colo. 70 at milepost 194 in the number 1 lane. Vehicle 1 lost control and ran off the left side of the road and up an embankment. The embankment caused the vehicle to roll 1 complete time. Vehicle 1 came to final rest approximately 3' off the left side of the road facing north.

*Id.* at 2. He concluded under "Harmful Events" that this was a "Non-Collison Accident: 01. Overturning." *Id.* at 3. He stated under "Driver Actions" that Plaintiff "[e]xceeded safe/posted speed." *Id.*

At his deposition, Trooper Remillard was asked, "[D]id you see any other vehicle that may have been involved with this accident?" to which he responded, "No." *Defs.' Ex. C* [#43-3] at 13:6-9. He was then asked, "Do you believe that this was a single car accident?" to which he responded, "I do." *Id.* at 13:10-12. He then described the typical procedure he would have instigated had he believed the accident to be the result of a hit-and-run:

> We would first broadcast or try to get the driver -- description of the vehicle, at best a plate, but at least a general description of the vehicle, and broadcast that so that officers ahead of that vehicle, whichever way it was traveling, could keep an eye out for it. We would probably contact [the Colorado Department of Transportation] with the Eisenhower Tunnel to see if they could see -- see the vehicle entering the Eisenhower Tunnel because they have cameras that they monitor, and see if there were any potential other uninvolved witnesses who would give us a vehicle description as well.

*Id.* at 13:15-14:1. There is no evidence that any of these procedures were employed, given Trooper Remillard's belief that this was a single car accident. *Id.* at 13:10-12.

9

Trooper Remillard was further asked at his deposition, "*"Can you tell me what [Plaintiff] generally told you when you talked to her that day?" to which he responded, "Yeah. She told me she just lost control and went off the left side of the road and – and rolled over, is my recollection of what she said." *Id.* at 14:17-21. He was also asked, "If someone would have tapped her in the rear, what – would there have been different things you would have seen at the scene?" to which he responded:

> Most likely, yes. I mean, I can't say for sure, but there would probably be other debris -- potentially be other debris, especially at highway speeds. There would be marks on the roadway from the other vehicle. Again, if there was speeding in those road conditions, I would -- I would – from my training and experience, think that the other vehicle would potentially lose control as well. That – that's what I would expect to see, again, if there was a rear-end collision at -- at highway speeds on I-70.

*Id.* at 18:6-18. Trooper Remillard was then asked, "Did you see any debris on I-70 other than the debris from -- other than the debris that would have been left from her vehicle?" to which he responded, "My recollection is that there wasn't really any debris on the roadway at all even from her vehicle because her vehicle just slid off, and then it didn't start to roll, which would cause the debris, until it was already off the roadway. So I don't recall any debris on the actual roadway." *Id.* at 18:25-19:8.

The second piece of evidence on which Defendants primarily rely comes from property field appraiser Joshua Messer ("Messer"), who later inspected Plaintiff's vehicle. He testified in part that he had been "requested to see if there was [sic] any indications of a -- possibly another vehicle striking this vehicle." *Defs.' Ex. D* [#43-4] at 39:15-17. He found that "[t]here -- there does not appear to be paint transfer on that [bumper] which could be an indication of contact with another vehicle." *Id.* at 25:9-11.

10

"'Once the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial.'" *Sanchez v. Corizon Health, Inc.*, No. 21-8069, 2022 WL 4857122, at *4 (10th Cir. Oct. 4, 2022) (quoting *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (internal quotation marks omitted)). "'Those specific facts must be supported by particular parts of materials in the record; relying on mere pleadings is insufficient.'" *Sanchez*, 2022 WL 4857122, at *4 (quoting *May*, 929 F.3d at 1234) (citation and internal quotation marks omitted)). "'Unsubstantiated allegations carry no probative weight in summary judgment proceedings.'" *Sanchez*, 2022 WL 4857122, at *4 (quoting *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks omitted)).

In her Response [#61], Plaintiff attempts to discredit both Trooper Remillard and Mr. Messer. For example, she notes that Trooper Remillard was not assigned to the Vehicular Crimes Unit until two years after Plaintiff's accident occurred, *Depo. of Remillard* [#61-2] at 6:18-25; that he testified that he did not recall ever "specifically asking" Plaintiff whether another person was involved in the accident, *id.* at 41:21-23; and that Mr. Messer was not trained in accident reconstruction, i.e., in how damage occurred to a vehicle, but rather only in what damage was actually there, *Depo. of Messer* [#61-1] at 7:2-9. *Response* [#61] at 13-14. In addition, Plaintiff states that "[t]he accident occurred when an unknown driver hit (tapped) back of vehicle Plaintiff was driving in the left lane causing for Plaintiff to turn to the left sliding on to the shoulder . . . ." *Id.* at 12.[5]

---

[5] Plaintiff also makes statements contesting that this was a rollover accident and regarding what damage there was to the roof and windshield of her car, but these issues appear to be irrelevant to whether another vehicle caused the incident. *See, e.g.*, *Response* [#61] at 13-14.

11

The only evidence in support of these statements comes from Plaintiff's deposition. *See* [#68-1]. Plaintiff does not appear to remember much about the circumstances surrounding the accident. For example, she does not remember how hard it was snowing, whether it was a blizzard, whether the roads were icy, whether traffic was light, medium, or heavy, how long it took her to travel from Grand Junction to where the accident occurred, whether there was any traffic around her just prior to the accident, which lane she was traveling in, the time of day of the accident, her visibility at the time of the accident, or whether there was a car in front of or beside her just prior to the accident. *See Depo. of Pl.* [#68-1] at 34, 37, 39, 44, 56-57, 61, 71. She does recall that an automobile behind her hit her causing her to swerve off the road, although she does not remember anything about the type of car it was. *Id.* at 70-71.

Given that California law requires there to be proof of physical contact between Plaintiff's vehicle and the purported unidentified vehicle under the circumstances of this case, and given that there is sworn testimony by Plaintiff that such contact occurred, the Court finds that there is a genuine issue of material fact and that summary judgment at this stage is inappropriate.

Accordingly, the Court **recommends** that the Motion [#43] be **denied** with respect to Plaintiff's breach of contract claim against Defendant Liberty Mutual Fire Insurance Company.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#43] be **GRANTED in part and DENIED in part**, and that summary judgment **ENTER** in favor of Defendant Liberty Mutual Insurance Company on Plaintiff's sole claim for breach of contract against this Defendant.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: January 5, 2023

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge